LISCOMB *v.* TWINWOOD, INC.

1. CONTRACTS—PATENTS—SALE OF FOREIGN RIGHTS—SUPPLEMENTAL
   AGREEMENT.

   Plaintiff inventor was entitled to only 12-1/2% of the $1,000
   proceeds received from defendant's Canadian sale of plaintiff's
   patent rights in a catch-basin cleaner under the parties'
   original agreement, where their supplemental agreement re-
   garding a fixed amount to be paid plaintiff if no Canadian
   sale occurred specifically provided that it would be inopera-
   tive should the Canadian patent rights be sold with a certain
   six-months-period and the sale was made within that period
   with plaintiff's written consent although he had requested
   defendant to defer the sale with the hope that a higher
   price could be obtained, consequently, a trial court finding
   that plaintiff had agreed to revert to the original formula
   payment clause in hopes of obtaining a higher price for the
   Canadian rights at a later date, was amply supported by the
   evidence.

2. APPEAL AND ERROR—TRIAL—UNRAISED ISSUES—REVIEW.

   An issue in a civil case which was not raised at any point
   during the course of the lower court proceedings will not be
   considered for the first time on appeal.

Appeal from Isabella, Robert H. Campbell, J.
Submitted Division 3 May 6, 1970, at Grand Rapids.
(Docket No. 8,463.)  Decided June 3, 1970.

Complaint by Donald L. Liscomb against Twin-
wood, Inc. for breach of contract regarding pay-

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur, Patents § 126.
[2] 5 Am Jur 2d, Appeal and Error § 618.

ment of proceeds from sale of foreign patent rights. Judgment for defendant. Plaintiff appeals. Affirmed.

*Hughes & Truck,* for plaintiff.

*Lynch, Gallagher, Lynch & Kerr,* for defendant.

Before: HOLBROOK, P. J., BRONSON, and MUNRO,* JJ.

PER CURIAM. Plaintiff and defendant entered into an agreement for the sale of plaintiff's patent rights in a catch-basin cleaner. Among other considerations, defendant agreed to pay plaintiff in the event of a Canadian sale of the rights, 12–1/2% of the net proceeds up to the amount of $12,500.[1] A supplemental agreement provided that plaintiff was to receive $10,000 at the rate of $150 per month in the event that no Canadian sale was consummated.[2] Upon such a sale, however, the parties would resort to the original formula clause.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] To pay to Liscomb 12–1/2 per cent of the net proceeds of the sale of Canadian patent rights and/or royalties, not to exceed $12,500; said sum if paid from royalty, to be paid at the rate of 50 per cent of Twinwood's net share of said royalty. Nothing in this paragraph shall be construed to place any obligation on Twinwood to initiate or complete the sale of Canadian rights.

[2] Supplemental Agreement.

As a further consideration, Twinwood shall pay to Liscomb the sum of $10,000 at the rate of $150 per month commencing six months from date hereof if no Canadian sale of patent rights and/or royalties is consummated as contemplated by paragraph 5 on page 3 of the agreement dated October 30, 1963 under the heading "Twinwood Agrees,"

Provided, however, that if said Canadian patent rights are conveyed or Canadian royalties received by Twinwood, then in such event, Twinwood shall receive credit for all of said payments and the terms of the said paragraph 5 shall come into full force and effect. Nothing herein contained shall obligate Twinwood beyond the terms of said original agreement dated October 30, 1963, if a Canadian transaction is consummated.

When the basin cleaner proved less productive than originally anticipated, defendant was able to obtain only $1,000 for the Canadian rights, thus entitling plaintiff to $125 under the formula clause. Defendant in its letter to plaintiff stated:

"At the present time I have a legitimate buyer for all Canadian rights for $1000 cash. This amount is satisfactory to the remaining interest holders. Thus, you are entitled to $125, payment in full, in settlement of all claims against me under the terms of our present agreement. This figure, of course, is the gross figure and from this must be deducted your appropriate share of costs for this transaction.

"However, because this figure is so much less than you and I anticipated, the conditions as you represented them to me have been greatly altered and different. Because I realize this figure is low, I am willing to allow the original calculations to remain effective except that there will be no monthly payment due you until the machine is more satisfactorily developed and we can sell Canadian rights at a much higher figure.

"Thus, you have one of two choices. One: you can accept the $125 minus expenses immediately, or two: modify the original agreement so that you can get 12-1/2% of the net sales when and if a better deal is consummated. This, I assure you, will be attempted most strenuously when we have a machine developed that is of satisfactory functional and sales appeal."

This letter was answered by the plaintiff's attorney July 27, 1964, prior to the expiration of the time in which defendant could sell the patent rights for Canada. It is stated therein as follows:

"It is my understanding that by work on your part and that of your agents that a new design has been worked out for the machine and that a

considerable amount of your own funds have been expended in developing the machine and that now it seems quite likely that a machine can be built that should work out for the best interests of all parties concerned including the interest of my client.

"I am therefore authorizing you to forbear any payments due soon under the agreement with Mr. Liscomb for the consideration that you will use due diligence in the developing of the machine and placing same on the market. I agree that you have a valid offer for the Canadian rights but ask that you do not sell same and use diligence as presently planned on your part that eventually same may be sold if decided to do so at a much better price than your present offer.

"Before sending this letter to you I am sending same to Mr. Liscomb that it is my advice that the below approval and consent should be executed by himself and returned to this office so that I can then forward same to your office."

The said letter was approved and consented to by the plaintiff by affixing his signature thereto.

The supplemental agreement specifically provided that it would be inoperative provided the Canadian patent rights were sold prior to six months from the 28th day of January, 1964, or the 28th day of July, 1964. In any event, if there was a sale of such rights then the original agreement would control and plaintiff would be entitled to 12–1/2% of the amount received from such sale. Defendant made arrangements to sell the Canadian patent rights for $1,000 on July 20, 1964, and plaintiff agreed that this was a *bona fide* offer, and thus permissible unless both parties agreed that the sale would not take place. Plaintiff requested that the sale not take place but that a sale be deferred with the hope that a higher price could be obtained.

The trial court found that plaintiff had indeed agreed to revert to the formula clause in hopes of obtaining a higher price for the Canadian rights at a later date. There was ample evidence to support this conclusion by the trial judge. We will not disturb this finding of fact. *Barnes* v. *Beck* (1957), 348 Mich 286; *Merrill* v. *Shumway* (1962), 367 Mich 14. Reversal on this ground is afforded only when "crucial proof has been overlooked or ignored". *Northwest Auto Company* v. *Mulligan Lincoln-Mercury, Inc.* (1957), 348 Mich 279, 284.

Plaintiff raises a second issue on appeal: "Should a term be implied in the agreements that, to be accepted, an offer for the Canadian patent rights must be reasonable?"

Plaintiff's second issue was not raised at any point during the course of the lower court proceedings. It will not be considered for the first time on appeal. *Baker Construction, Inc.* v. *Chris Nelson & Son, Inc.* (1965), 1 Mich App 450; *Young* v. *Morrall* (1960), 359 Mich 180.

Affirmed. Costs to defendant.